UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JAIDER SAMIR ARGUMEDO ACOSTA,<br>Petitioner,<br>v.<br>JULIO HERNANDEZ, et al. ,<br>Respondent. | Case No. C26-3141-MLP<br>ORDER |

Petitioner Jaider Samir Argumedo Acosta is currently detained by U.S. Immigration and Customs Enforcement ("ICE") at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington. He filed, through counsel, this 28 U.S.C. § 2241 habeas action, asserting his July 23, 2026 arrest and redetention without first receiving notice or an opportunity to be heard, violated his Fifth Amendment right to due process. (Dkt. # 1, ¶¶ 3-4.) Petitioner also filed a declaration. (Dkt. # 1-2, Ex. A, "Argumedo Acosta Decl."). Petitioner seeks release from custody and permanent injunctive relief related to any future redetention. (Dkt. # 1 at 17.) Respondents filed a return (dkt. # 5), together with declarations from U.S. Department of Homeland Security

("DHS") Deportation Officer Nhat Truong (dkt. # 6) ("Truong Decl.") and their counsel, Lawrence Van Daley (dkt. # 7) ("Van Daley Decl." [1]). Petitioner filed a traverse (dkt. # 10).

## I. BACKGROUND

Petitioner is a citizen of Colombia who entered the United States near Yuma, Arizona on June 5, 2024. (Argumedo Acosta Decl., ¶¶ 1-2.) United States Border Patrol ("USBP") encountered Petitioner that day, detained him, and transported him to the Eloy Detention Center. (Truong Decl., ¶ 3; Van Daley Decl., Ex. 4 at 3.) USBP served Petitioner an "EREBC-Expedited Removal-Securing the Border," and shortly thereafter USBP processed Petitioner for an expedited removal order. (Truong Decl., ¶¶ 3-6.)

On August 5, 2024, after Petitioner had claimed credible fear of returning to Colombia, the United States Citizenship and Immigration Services ("USCIS") made a positive finding of credible fear in Petitioner's case. (Truong Decl., ¶¶ 8-12.) Accordingly, on August 24, 2024, Petitioner was issued a Notice to Appear ("NTA") and placed in removal proceedings, during which time he could apply for asylum before an immigration judge. (*Id*. at ¶ 13; Argumedo Acosta Decl., ¶ 2.)

On September 6, 2024, Petitioner was released on parole and allowed to continue his removal proceedings outside of detention. (Argumedo Acosta Decl., ¶ 3; Truong Decl., ¶¶ 14-15.) The Interim Notice Authorizing Parole states that Petitioner's parole was valid for one year from the date of the notice, automatically terminating after one year or upon Petitioner's departure or removal. (Van Daley Decl., Ex. 2 at 2.)

Upon his parole and release into the United States, Petitioner relocated to Seattle to live with a U.S.-citizen friend who offered Petitioner support, and his request to transfer his

[1] Respondents also filed a praecipe (*see* dkt. # 8) to correct the Van Daley Decl. (dkt. # 7).

immigration proceedings to Seattle was granted. (Argumedo Acosta Decl., ¶ 3.) Petitioner received instructions for an ICE check-in in Seattle, which he attended on December 4, 2024. (*Id*. ¶ 4.) Petitioner attests he also attended check-ins on June 18, 2025, December 18, 2025, and July 23, 2026. (*Id*.) During this time, Petitioner filed an application for asylum on February 21, 2025, received a work permit, and a social security number. (*Id*. ¶ 5.)

On June 18, 2026, Petitioner was arrested on suspicion of committing assault. (Argumedo Acosta Decl., ¶ 8.) He was held at King County Jail but unconditionally released a few days later when the prosecutor's office declined to file charges. (*Id*.; dkt. # 1-3, Ex. B.)

One month later, on July 23, 2026, Petitioner attended a scheduled ICE check-in, bringing a copy of the court order showing no charges were filed from the June 2026 arrest. (Argumedo Acosta Decl., ¶ 10; dkt. # 1-3, Ex. B.) At this check-in, an officer informed Petitioner that policies "had changed" and "everyone who had a criminal record must be detained." (*Id*.) Petitioner attests that he showed the officer the court order showing no charges were filed, but he was handcuffed and taken to the NWIPC, where he remains detained. (*Id*.)

Petitioner was scheduled for an individual merits hearing on September 22, 2026, or September 24, 2026. (Argumedo Acosta Decl., ¶ 5; Truong Decl., ¶ 22.) The Court has not been apprised of the outcome of this hearing.

## II. LEGAL STANDARD

District courts may grant writs of habeas corpus "within their respective jurisdictions." 28 U.S.C. § 2241(a). This authority extends to challenges to immigration detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001). A petitioner may obtain relief by showing that he is "in custody in violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(c). A

petitioner bears the burden of proof by a preponderance of the evidence. *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004).

## III. DISCUSSION

### A. Statutory Detention Standards

Respondents contend that Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b), but their position is inconsistent with the record and Respondents' treatment of Petitioner. Respondents contend Petitioner's arrest was not "a revocation of an existing release," but that Petitioner's parole was already expired and the arrest "returned him to the custody required by 8 U.S.C. § 1225(b)(1)(B)(i)." (Dkt. # 5 at 5-6.) However, Petitioner attests that after expiration of his parole on September 6, 2025 (dkt. #5 at 6; Van Daley Decl., Ex. 2 at 2), he voluntarily attended an ICE check-in on December 18, 2025. (Argumedo Acosta Decl., ¶ 4.) It is undisputed that Respondents did not redetain Petitioner after parole expiration and prior to the July 23, 2026 check-in. There is also no evidence that Petitioner's asylum application was cancelled.

Furthermore, the operative NTA in the record shows that Petitioner was not treated as seeking admission under § 1225, as the issuing officer declined to designate Petitioner as an "arriving [noncitizen]." (Van Daley Decl., Ex. 3 at 2.) Instead, Petitioner was designated as a "[noncitizen] present in the United States who has not been admitted or paroled." (*Id.*) This is notable because "arriving [noncitizen]" is the operative language used to define the scope of § 1225(b)(2)(a) in the implementing regulation. *See* 8 C.F.R. § 235.3(c)(1); *see also Martinez v. Hyde*, 792 F. Supp. 3d 211, 218 (D. Mass. 2025) (concluding "arriving [noncitizen]" language is synonymous with § 1225). Moreover, the arrest warrant in the record states that Petitioner is

being taken into custody as authorized by "section[] 236 of the [INA,]" codified at 8 U.S.C. § 1226. (Van Daley Decl., Ex. 5.)

Respondents' treatment of Petitioner is more consistent with § 1226. However, the Court ultimately need not fully resolve the statutory authority governing Petitioner's detention because, separate from that statutory authority, the government "remain[ed] obligated to effectuate [Petitioner's] detention in a manner that comports with due process." *Ramirez Tesara v. Wamsley*, 800 F. Supp. 3d 1130, 1137 (W.D. Wash. 2025).

**B. *Mathews* Due Process**

Due process protections extend to all persons within the United States, including noncitizens, regardless of immigration status. *Zadvydas*, 533 U.S. at 693. Procedural due process requires meaningful notice and a genuine opportunity to be heard before the government infringes a protected liberty interest. *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). In immigration detention cases, courts in this Circuit apply the *Mathews* balancing test, weighing: (1) the private interest affected; (2) the risk of erroneous deprivation under existing procedures and the value of additional safeguards; and (3) the government's countervailing interest, including fiscal and administrative burdens. *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206-07 (9th Cir. 2022); *see also E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1321 n.4 (W.D. Wash. 2025) (collecting cases). The Court applies that test below.

*1. Private interest*

Freedom from physical confinement is a substantial liberty interest. *See Zadvydas*, 533 U.S. at 690; *Ramirez Tesara*, 800 F. Supp. 3d at 1136. Even those initially released from detention on parole take with them "a liberty interest" and are entitled to "full protections of the due process clause." *Ramirez Tesara*, 800 F. Supp. 3d at 1136. It is undisputed that Petitioner

was released to live in the United States, which he did for approximately two years. Petitioner also attests that he voluntarily checked-in with ICE after his parole expiration, and no action was taken to alter his status as released into the United States. Respondents characterize Petitioner as an "applicant for admission whose time-limited parole had already ended," dkt. # 5 at 8, but ignore that the record demonstrates Respondents have processed and treated Petitioner otherwise, taking no action to modify his status after parole expiration.

During his release to live in the United States, Petitioner filed for asylum after receiving a finding of credible fear, worked as a handyman and porter, and later worked at a senior living facility as a floor and custodial technician (Argumedo Acosta Decl., ¶¶ 5-6.) He has been involved in various church organizations, community groups like Casa Latina, and established a support group of friends in the absence of family in the United States. (*Id.* ¶ 7.) Petitioner possesses a liberty interest, and this factor weighs in his favor.

*2. Risk of Erroneous Deprivation*

The factual dispute surrounding Petitioner's arrest for alleged assault underscores the risk of erroneous deprivation in this case. Petitioner first asks this Court to deem inadmissible the declaration of Nhat Truong, dkt. # 6. (Dkt. # 10 at 6.) Because the Court finds that the second *Mathews* factor weighs in Petitioner's favor even considering the disputed evidence, it need not reach this issue.

Respondents argue a pre-deprivation hearing would not have changed the fact of Petitioner's parole expiring in September 2025, and that Respondents arrested Petitioner at his first post-expiration check-in where the fact of his June 2026 arrest served as a contemporaneous basis for detention. (Dkt. # 5 at 8.) However, Respondents do not address Petitioner's attestation to checking-in with ICE previously in December 2025. Moreover, Respondents do not provide

evidence that the July 23, 2026 check-in was, in fact, Petitioner's first ICE check-in after his parole expired.

Respondents also contend that the disposition of Petitioner's "charge" is not "in this record" or "not known." (Dkt. # 5 at 8; Truong Decl., ¶ 16.) However, Petitioner attests and provides evidence that he voluntarily attended ICE check-ins after parole expired on December 18, 2025, and then again on July 23, 2026, bringing with him a copy of a King County District Court order showing charges were not filed against him after the arrest. (Argumedo Acosta Decl., ¶¶ 4, 10; dkt. # 1-3, Ex. B.) Respondents do not dispute this.

As this Court has observed, "there are fundamental differences between an allegation, a criminal charge, and a criminal conviction," and the habeas court "does not adjudicate the truth of the allegation against Petitioner." *Corado v. Bondi*, 2026 WL 1113386, at *5 (W.D. Wash. Apr. 24, 2026). In addition, courts have repeatedly recognized that when the government seeks to redetain a previously released noncitizen based solely on unadjudicated allegations, the risk of error is high and a pre-deprivation hearing has substantial value. *See Singh v. Noem*, 2026 WL 265670, at *5-6 (W.D. Wash. Feb. 2, 2026).

Taken together, the record in this case demonstrates that a pre-deprivation hearing would have been very useful for understanding the facts surrounding Petitioner's arrest and ascertaining Petitioner's status. The risk of erroneous deprivation was high and this factor weighs in Petitioner's favor.

*3. Government Interest*

The government has a legitimate and substantial interest in enforcing immigration laws, ensuring attendance at proceedings, protecting public safety, and efficiently managing parole programs. Respondents, however, identify no concrete way in which providing basic

pre-deprivation notice or a prompt post-deprivation hearing would have undermined those interests. Custody and bond hearings already occur regularly within the existing immigration system, and courts have repeatedly found the incremental administrative burden modest relative to the risk and consequences of erroneous detention. *See*, *e.g.*, *E.A. T.-B.*, 795 F. Supp. 3d at 1324; *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019); *Alfonso v. Bondi*, 2026 WL 395326, at *6-7 (W.D. Wash. Feb. 12, 2026).

On this record, Respondents have not shown exigent circumstances—such as an immediate, specific danger to the community or imminent flight—that would make even a prompt post-deprivation hearing impracticable. Respondents' assertion that "ICE returned [Petitioner] to custody after a state arrest for assault in the first degree" is an incomplete representation of the record in this case. The third *Mathews* factor therefore also favors Petitioner as a general matter.

Balancing the *Mathews* factors, the Court concludes that Respondents' redetention of Petitioner without first providing pre-deprivation process deprived him of a liberty interest in remaining free, that there was a risk of erroneous deprivation, and there was value in additional procedural safeguards. Further, Respondents have not articulated an interest that would have made such additional process impracticable. His redetention, therefore, was unlawful under the Due Process Clause of the Fifth Amendment and habeas relief is warranted.

Courts in this District generally find that release is the appropriate remedy for a constitutionally deficient redetention because any post-deprivation hearings "occur after the fact" and "cannot prevent an erroneous deprivation of liberty." *See, e.g.*, *E.A. -T.B.*, 795 F. Supp. 3d at 1324; *Ledesma Gonzalez v. Bostock*, 808 F. Supp. 3d 1189, 1204 (W.D. Wash. 2025); *see also Ramirez Tesara*, 800 F. Supp. 3d at 1138 (granting petitioner's motion for a temporary

restraining order that challenged his redetention under *Mathews* and finding that "immediate release [wa]s necessary to restore the status quo ante litem") (underlining in original). The Court similarly finds that restoring Petitioner to the status he held prior to his erroneous deprivation (*i.e.*, released in the United States and subject to reasonable conditions) is the appropriate remedy.

**C. Injunctive Relief**

Petitioner seeks to enjoin Respondents from redetaining him during the pendency of his removal proceedings absent written notice and a hearing prior to redetention, where Respondents would bear the burden by clear and convincing evidence that he is a flight risk or a danger to the community and that no alternatives to detention would mitigate those risks. (Dkt. # 1 at 17.) Respondents assert that injunctive relief would restrain how ICE may apply redetention statutes in the future if Petitioner's circumstances change later, noting that Petitioner remains in removal proceedings. (Dkt. # 5 at 10.)

Petitioner does not show a risk of irreparable harm absent a court order. (*See* dkt. ## 1 at 16, 10 at 11.) While the record establishes that Petitioner was detained without constitutionally adequate process, it does not show a specific, real, and immediate threat that he specifically will again be redetained without due process. Accordingly, Petitioner's request for permanent injunctive relief is denied without prejudice.

## IV. CONCLUSION

Based on the foregoing, the Court ORDERS as follows:

(1) Petitioner's petition for writ of habeas corpus (dkt. # 1) is GRANTED in part. Respondents shall RELEASE Petitioner from immigration detention within **twenty-four (24) hours**, subject to conditions no more restrictive than those in place prior to Petitioner's

redetention, and with any personal property confiscated from Petitioner including any personal identification documents other than a passport.[2]

(2) Respondents shall file a status report with the Court confirming Petitioner's release within **two (2) business days**

(3) Petitioner's request for injunctive relief is DENIED without prejudice.

(4) The Court will entertain any post-judgment motion for attorney's fees, as requested in the petition. Any fee petition must be filed within the deadline set by the Equal Access to Justice Act, 28 U.S.C. § 2412.

(5) The Clerk shall direct copies of this Order to all counsel of record.

Dated this 29th day of September, 2026.

MICHELLE L. PETERSON
United States Magistrate Judge

[2] Respondents make no reference to this request of Petitioner's; therefore, they make no argument against such a request. (*See generally* Dkt. # 5.)